UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINEC HOLMES,                       Case No. 09-10225

       Plaintiff,                           Anna Diggs Taylor
vs.                                             United States District Judge

MEYHOFER, *et al.*,                      Michael Hluchaniuk
                                                    United States Magistrate Judge

       Defendants.
_____/

# REPORT AND RECOMMENDATION
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. 19, 30)

**I.     PROCEDURAL HISTORY**

Plaintiff, a prisoner in the custody of the Michigan Department of Corrections, filed a civil rights complaint on January 21, 2009 against defendants, who are employed by the Department of Corrections. (Dkt. 1). Plaintiff claims that his Eighth Amendment rights were violated when he was restrained while on "suicide watch" and allegedly not permitted to use the bathroom. *Id.* This matter was referred to the undersigned for all pretrial proceedings on September 29, 2009 by District Judge Anna Diggs Taylor. (Dkt. 21). Defendants Miller, Smith, and Siver filed a motion to dismiss or for summary judgment on September 16, 2009. (Dkt. 19) and defendant Meyhofer filed a motion for summary judgment on December 9, 2009. (Dkt. 30). Plaintiff filed responses on November 2, 2009 and

January 5, 2009. (Dkt. 29, 32). These motions are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED**.

## II. STATEMENT OF FACTS

Plaintiff contends the defendants violated his Eighth Amendment rights on December 26, 2006 and December 27, 2006 when he was in "Top of Bed" (TOB) restraints and on Direct Observation status. Specifically, plaintiff complains that defendants Siver and Smith cut his clothing off him and confiscated his mattress. He contends that defendant Miller and others denied him bathroom breaks, forcing him to use his blanket as a "ramp" to urinate onto the floor. (Dkt. 1, ¶¶ 11-32; 40-42). Plaintiff acknowledges that he was placed on Direct Observation status after third shift staff "accused" him of having a razor and threatening to harm himself. (Dkt. 1, ¶¶ 12, 13).

According to Smith's affidavit, he reported that plaintiff had called him over to his cell and showed him something he was holding in his left hand. The object appeared to be, and plaintiff stated that the item was, a razor. Plaintiff demanded to see a supervisor and said that he would cut himself so he could be released from his restraints and taken to the hospital and that he would then cut everyone that he could. (Dkt. 19, Ex. A, ¶¶ 1-7). After Smith reported the incident, Siver went to

plaintiff's cell. Plaintiff told Siver that he had a razor and was going to cut his intestines out. When Siver entered the cell, plaintiff repeatedly said he was going to the hospital. He showed Siver a shiny object in his mouth, then refused to spit it out and said that he had swallowed it. Believing that plaintiff had a razor, which he had somehow secreted and could later use to harm himself, Siver ordered the plaintiff's placement on Direct Observation status. An inmate on Direct Observation status is given a suicide gown, blanket, and is allowed to retain his underwear. Plaintiff's clothing was cut off of him since he was in TOB restraints and checked to the extent possible given the restraints. His mattress was confiscated and searched and replaced with a suicide mat; and "Cutter's Mittens" were placed on his hands. (Dkt. 19, Ex. B, ¶¶ 1-10; Ex. C, MDOC Policy Directive 04.06.115, "Suicide Prevention," at ¶¶ N, P).

Prisoners in TOB restraints are offered bathroom/water breaks every two hours. (Dkt. 19, Ex. D, ¶ 6). Plaintiff alleges that he asked Williams for bathroom breaks when she conducted her rounds at 1:15 a.m., 1:30 a.m. and again at 5:30 a.m. (Dkt. 1, ¶¶ 27, 28, 40). However, according to defendant Miller, she did not make the 1:15 a.m. round. (Dkt. 9, Ex. D, at ¶ 5). According to the housing unit logbook, Officer Breault conducted the 1:15 a.m. observation check on the plaintiff, and plaintiff was asleep at that time. Miller made the 1:30 a.m. round on December 27, 2006, but plaintiff was still asleep at that time. At 3:30 a.m., Miller

recorded that plaintiff was offered a bathroom and water break. At that time, plaintiff was verbally abusive and had urinated on the floor. Smith conducted the check at 5:30 a.m. and recorded that plaintiff appeared to be sleeping and would not respond to staff when asked if he wanted a bathroom and water break. (Dkt. 19, Ex. E).

## III. ANALYSIS AND CONCLUSIONS

### A. Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

"In deciding a motion for summary judgment, [the] court views the factual

evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). A genuine issue of material fact exists only when, assuming the truth of the Nonmoving party's evidence and construing all inferences from that evidence in the light most favorable to the nonmoving party, there is sufficient evidence for a trier of fact to find for the nonmoving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56

motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265 F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B. <u>Deliberate Indifference</u>

Plaintiff must satisfy both an objective and subjective test to establish a constitutional deprivation. To meet the objective prong, a plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component is often described as the denial of "the minimal civilized measure of life's necessities." *Berryman v. Johnson*, 1991 WL 150808 (6th Cir. 1991), quoting, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In this context, the Eighth Amendment protects against prison conditions that threaten to cause health

problems in the future, not just those that cause immediate harm. *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) (holding that prisoner stated a cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health). To meet this objective standard, however, "the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36 (emphasis in original).

The Eighth Amendment requires the states to provide prisoners with the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The function of a federal court in a conditions of confinement case is not how best to operate a prison facility, nor to decide what is most desirable to the inmates. *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992), quoting, *Rhodes*, 452 U.S. at 347); *see also Hardin-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). As the United States Supreme Court has recognized, "a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation" can violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *see also Tate v. Campbell*, 85 Fed.Appx. 413, 417 (6th Cir. 2003) ("forcing a person in the custody or under the control of state authority to publicly soil themselves" may constitute an Eighth Amendment violation).

However, the length of time the prisoner was subject to the condition is critical to determining whether an Eighth Amendment violation occurred. As recently noted by the Eastern District of Tennessee, "[i]n this circuit, a prisoner's claim of a denial of clean linens, clean clothes, laundry detergent, and sanitary food *for a brief period of time* fails to state an Eighth Amendment violation." *Starnes v. Green Co. Sheriff Dep't*, 2010 WL 2165368 (E.D. Tenn. 2010) (emphasis added), citing, *Walker v. State Dep't. of Corrections*, 2000 WL 32057, *1-2 (6th Cir. 2000); *see also Wilkins v. Ahern*, 2008 WL 4542413, *6 (N.D. Cal. 2008) ("Here, plaintiff's allegations that he was placed in a cell with a clogged toilet for six hours ... do not rise to the level of an Eighth Amendment violation.") (citations omitted); *Owens v. Padilla*, 2008 WL 3916068, *4 (N.D. Cal. 2008) ("Plaintiff's confinement in the barbershop room without a toilet for approximately six hours ...

would not, without more, implicate the Eighth Amendment.") (citations omitted); *Cunningham v. Eyman*, 17 Fed.Appx. 449 (7th Cir. 2001) (Court held that inmate failed to establish an Eighth Amendment deliberate indifference claim based on allegations that he urinated and defecated on himself due to officers' refusal to remove his restraints so he could use the toilet, even though the inmate was forced to remain in his soiled clothing for four to five hours, holding: "[t]hough certainly unpleasant, these hardships were temporary and as this court's case law makes clear, they were not of sufficient severity to implicate the Eighth Amendment."). Indeed, "the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets." *Abdur-Reheem-X v. McGinnis*, 1999 WL 1045069 (6th Cir. 1999)

     In this case, defendants have presented admissible evidence through affidavits and the log notes showing that plaintiff was regularly checked to see if he needed a bathroom break. Plaintiff offers no admissible evidence to contradict or rebut defendants' evidence. Moreover, even accepting plaintiff's allegations, he was denied a bathroom break for only a few hours and urinated on the floor on one occasion, the undersigned suggests that this does not rise to the level of an Eighth Amendment violation. Summary judgment should be granted to defendants because plaintiff has failed to satisfy the objective prong of the deliberate indifference test as to his denial of bathroom breaks claim.

Plaintiff also asserts a claim based on the use of restraints, which may, under certain circumstances, violate the Eighth Amendment. *Hope v. Pelzer*, 536 U.S. 730 (2002) (chaining shirtless inmate to outdoor "hitching post" in standing position with arms raised for seven-hour period with minimal water and no bathroom breaks violated the Eighth Amendment, where safety concerns had abated and no emergency situation was presented). However, the use of TOB restraints does not necessarily amount to the unnecessary and wanton infliction of pain. *Anthony v. Gilman*, 2006 WL 222842, *4 (W.D. Mich. 2006), citing, *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (placement in hard TOB restraints for 18 hours was not cruel and unusual punishment, where testimony and documentation showed that plaintiff was allowed adequate toilet breaks and water); *Williams v. Vidor*, 17 F.3d 857, 859 (6th Cir.1994) (court could not conclude that use of TOB restraints violated Eighth Amendment as a matter of law). "This is particularly true where the restraints are justified by a security concern." *Anthony*, at *4.

In this case, defendants presented admissible evidence through affidavits that they believed plaintiff had a razor blade, had threatened to kill himself, and had swallowed the razor blade. Such circumstances clearly present a security concern and implicate defendants' obligation to ensure the safety of prisoners in their custody. Defendants also presented evidence that they followed established

procedure under such circumstances, including the removal of plaintiff's clothing, the use of a "suicide gown," the removal of his mattress and the use of a "suicide mat," and the use of TOB restraints. Plaintiff has not presented any admissible evidence that contradicts or rebuts defendants' version of events. Under the circumstances, summary judgment should be granted in defendants' favor on plaintiff's deliberate indifference claim.

    C.    <u>Eleventh Amendment</u>

Plaintiff alleges in his complaint that the suit is against defendants in their official and personal capacities. A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In this case, defendants are employed by the State of Michigan so a suit against them in their official capacity is a suit against the State of Michigan. "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Id*. The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendants in their official capacity. However, the Eleventh Amendment does not bar suit against defendants in their individual capacity under 42 U.S.C. § 1983.

D. Qualified Immunity

Defendants claim to be entitled to qualified immunity regarding their actions in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

The Supreme Court revisited their decision in *Saucier* and concluded that

mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." The undersigned suggests that, given the foregoing conclusions regarding plaintiff's claims, defendants are entitled to qualified immunity on those claims.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 30, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

# CERTIFICATE OF SERVICE

I certify that on June 30, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Julia R. Bell, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Dominec Holmes, ID# 275727, MACOMB CORRECTIONAL FACILITY, 34625 26 Mile Road, New Haven, MI 48048.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov